## STILLMAN BARBER v. SARAH S. B. GEER.

### Decided April 27, 1901.

**1.—Evidence—Admissibility of Mutilated Letter—Issue for Jury.**

Where a letter was not admissible in evidence without explanation because of mutilation and erasures therein, and plaintiff, who offered it, testified as to the erasures, and this testimony was contradicted by defendant, it was proper for the court to submit the issue thus raised to the jury.

**2.—Deposition—Authority of Officer to Take.**

The commission to take a deposition was addressed to "any notary public * * * in and for the county, city of New York, State of New York." The officer who took the deposition signed his certificate "H. McW., Notary Public, Kings County, certificate filed in New York County," using a seal marked "H. McW., N. P. Kings County," and the caption of the certificate stated that he was "a notary public, duly commissioned, sworn and acting in and for the county of New York, State of New York." Held, that it did not appear that the officer was not authorized to take the deposition, and that a motion to quash it was properly overruled.

**3.—Same—Return—Indorsements on Envelope.**

The officer taking a deposition inclosed it in an envelope, writing his name across the seal and indorsing on it the name of the witness, as required by article 2284, Revised Statutes, and this envelope he inclosed in another, without writing his name across the seal of the outer envelope, or indorsing the name of the witness thereon. Held in this opinion, Associate Justice Hunter dissenting, that there was a substantial compliance with the statute; but, upon ruling of the Supreme Court on certificate of dissent it is held that the return was insufficient, and that the deposition should have been suppressed.

**4.—Marriage Contract—Breach—Pleading—Written and Oral Promise.**

In an action for breach of a contract of marriage plaintiff's petition alleged a contract made by correspondence, on the strength of which she came to Texas and met defendant, and that at divers times thereafter she and defendant discussed their relation to each other and their matrimonial engagement, and defendant at all times expressed much love and affection for her, and at all times expressed himself so as to assure her he would certainly carry into effect his agreement and would marry her, but finally refused to do so. Defendant requested a charge to the jury that if not contract by correspondence was shown, plaintiff could not recover, and assigned error to its refusal. Held in this opinion, Associate Justice Hunter dissenting, that the petition alleged both an agreement to marry by correspondence and by parol; but upon the ruling of the Supreme Court upon certificate of dissent, it is held that the allegation of what transpired after plaintiff came to Texas did not set up any contract, and that it was error to refuse the requested charge.

Appeal from Fisher. Tried below before Hon. P. D. Sanders.

*L. B. Allen, A. H. Kirby,* and *Theodore Mack,* for appellant.

*McCrea, Green & Ponder,* and *Martin Dies,* for appellee.

HUNTER, Associate Justice.—This suit was filed by appellee in the District Court of Fisher County on the 31st day of January, 1899, to recover damages from the appellant, alleged to have been sustained by reason of a breach of a contract of marriage. The material part of the petition is as follows:

That in the month of June, 1897, while plaintiff resided in the city of Providence, R. I., and the defendant in Texas, she entered into a correspondence with him, which was continued until the 19th day of April, 1898. That during said time and in the course of said correspondence, and in several of his letters to her, he expressed his admiration, love and affection for her, and made, in pursuance thereof, propositions of marriage to her which were by her accepted, whereby they became engaged to be married, agreeing, the defendant on his part, to marry plaintiff, and the plaintiff, on her part, to marry defendant. That in pursuance of said contract and agreement, she, at the special instance and request of defendant, and for the purpose of carrying out her part of said marriage contract, closed out all of her personal effects at her home in Rhode Island at a great sacrifice, and on about the 6th day of May, 1898, started for Texas, and the home of defendant, paying her own expenses, arriving at Roby, Texas, on the 13th day of said month, where defendant met her and carried her to his home.

That it was agreed and understood between them that they should be married so soon as she could reach his home, or within a reasonable time thereafter, and relying fully and implicitly in the honor and integrity of defendant, and believing he would in all things comply with his said contract, she was induced to sell out her personal effects as aforesaid, make her said trip to Texas, and take her abode at the residence of said defendant. That upon her arrival at the residence of defendant, and on

sundry and divers times thereafter, she and defendant discussed their relation to each other and their matrimonial engagement, and the defendant at all times expressed much love and affection for her, and at all times expressed himself so as to assure her that he would certainly carry into effect his agreement with and would marry her, but from time to time put the matter of their marriage off to some future time indefinite, assigning therefor some reasons, many of which she does not now remember, but at all times assuring her that he would carry out their agreement and would marry her in a short while.

That defendant so acted and kept up such assurance of marriage with her until January 24, 1899, at which time he told her he would not marry her. That she has at all times been ready, willing, and able to carry out her part of said contract, and has urged and requested him to perform his part thereof, but he has refused to do so.

That acting upon his promises to marry her and his avowals of affection, she left her home in Rhode Island, sold her property at a sacrifice, as above alleged, and came to Texas, and to the home of defendant to, in good faith, carry out and perform her contract with the defendant; that by reason of his failure to perform his said contract with plaintiff she has undergone and still undergoes great mental suffering and humiliation, and that upon her good name has been cast the foul breath of suspicion, and she has been turned from the home of the defendant into which she had been induced to come for shelter and protection by the promises of marriage by the defendant so fairly made, and in such apparent good faith, out upon the cold charities of a strange land, and that too without the means with which to return to her home and family; that she is by reason of his failure to perform his said contract deprived of the benefits of an advantageous matrimonial connection to a man of wealth and social influence; that in the declining years of her life she is deprived thereby of the comforts of a home which she had justly calculated upon receiving in entering into a matrimonial contract with the defendant; that she is a woman of culture and refinement, and the defendant's conduct in turning her from his home and in refusing to perform his said contract has deeply wounded her pride, lacerated her feelings, crushed her spirits, and blighted her hopes; that by avocation she is a nurse, and at her former home in Rhode Island, where her efficiency in said avocation was known, she was able to earn a livelihood, and received for her services about $30 to $50 per month; that in consequence of the defendant's agreement to marry her and her coming to Texas, and the defendant's failure to carry out his agreement, she is deprived of the means or opportunity whereby she supported herself; wherefore she has sustained damages in the sum of $10,000, for which she sues and prays judgment.

The answer contains a general denial, and sets forth specially that the plaintiff, in June, 1897, opened up the correspondence with him and expressed a desire to come to Texas on a visit, claiming to be a relative of his and requested him to send her money to defray the ex-

penses of the trip; that, suspecting her motives, from the correspondence which had passed between them, he wrote her in the early part of January, 1898, that he would not send her any money, and that she had better stay in Rhode Island; that afterwards she, of her own motion, in May, 1898, came to his home in Fisher County, Texas, and remained until November, 1898, as a visiting relative and guest; that during said time he had ample opportunity to learn her dispoition and traits of character, and found they were such as would render his life miserable if she were his wife; "that he did not by correspondence enter into a contract to marry plaintiff; that in his correspondence with plaintiff defendant frequently offered to leave his home and meet plaintiff, and in one or more of his letters to plaintiff defendant informed plaintiff that when they should meet each other, if each should suit the other, a marriage might result, or words to that effect; that after having met and associated with plaintiff, defendant became convinced that she was not a suitable woman to make him a congenial consort; and he prayed for his costs. He also pleaded limitation of one year.

On the trial the jury found a verdict against the defendant for $2350, and he appeals to this court from the judgment rendered thereon.

Upon the main issue so formed,—the existence of the mariage contract as alleged,—the evidence was conflicting, but warranted the verdict in appellee's favor. The written correspondence between the parties before appellee came to Texas, including the contents of lost letters as reproduced in the testimony of appellee, tended to prove, and warranted a finding, that the parties had thus agreed to marry each other, and also the evidence warranted a finding that such contract was made orally after appellee came to Texas. The evidence also warranted the amount of the verdict.

On the former appeal, this being the second verdict in appellee's favor, the judgment was reversed because the court admitted in evidence, over the objection of appellant, a mutilated letter offered by appellee without explanation. Barber v. Geer, 23 Texas Civ. App., 531. On the last trial an explanation of the suspicious erasure was offered, as shown in bill of exception number 1, which was, however, controverted by appellee, and the issue thus formed was submitted to the jury, the proof upon it being somewhat conflicting and such as to warrant the court in admitting the letter with the explanation. We find no error in this ruling, and the assignments complaining of it are overruled.

Appellant put in issue appellee's character for "honesty and fair dealing," and now complains of the court's refusal to quash and exclude the depositions of Laura A. Burgess and Benjamin B. Sheldon, taken and read in evidence to rebut appellant's testimony upon this issue. Having thus injected what seems to be a false issue into the case, a majority of us doubt if appellant can avail himself of the rulings complained of to have the judgment reversed; but, without going into the merits of this question, we find no error in the court's refusal to quash the depositions. In one case the commission was addressed to "Any clerk of a

court of record having a seal; any notary public, or any commissioner of deeds duly appointed under the laws of Texas for the State of New York, in and for the County City of New York, State of New York." The officer who took the depositions signed his certificate as follows: "Howard McWilliams, Notary Public, Kings County, Certificate filed in N. Y. Co." In the caption he recites that he is "a notary public, duly commissioned and sworn and acting in and for the County of New York, State of New York." His seal contained the following: "Howard McWilliams, Notary Public, Kings County."

We think, taking the caption, seal, and certificate together, it sufficiently appears that he was authorized to act in both Kings and New York counties, or rather, it does not appear that he was not authorized to take the deposition in question.

In the other case the motion was to suppress the deposition of Benjamin B. Sheldon, a witness for the appellee, upon the following grounds: "1. Because the officer taking said deposition did not write his name across the seal of the envelope in which said deposition was returned into court. 2. Because said officer did not indorse on said envelope the names of the parties to the suit. 3. Because said officer did not indorse on said envelope the name of the witness whose deposition had been taken, as required by law."

Under an order of the court the original envelopes and deposition are sent up to us for our personal inspection, from which it appears that the deposition was inclosed in an envelope and sealed, and the name of Fred C. Olney twice written across the seal, and on the face of the envelope was indorsed the following: "To the Honorable the District Court of Fisher County, within and for the State of Texas, A. D., 18—. Enclosed is the deposition of Benjamin B. Sheldon of South Kingston, Rhode Island, to be used in hearing of a suit now pending before said court wherein Mrs. Sarah S. B. Geer is plaintiff and Stillman Barber is defendant, taken at the request of the said plaintiff and sealed up by me. Fredk. C. Olney, Notary Public."

This envelope was inclosed in another one, which was sealed up, but the officer's name was not written across the seal. A receipt, however, was in these terms: "Received from hands of F. C. Olney, A. B. Rodman, Asst. P. M." Also, underneath the above, were the proper indorsements of the clerk of the District Court of Fisher County, one, that he received the package from the post office at Roby, Texas (the county seat of Fisher County), and filed same on 10th day of September, 1900, and another that he had opened the package on the 10th day of September, 1900, at the request of L. B. Allen, the defendant's attorney. On the face of this envelope, in the right hand upper corner, were the necessary postage stamps, and the postmark: "Wakefield, R. I., Sep. 6, 2 p. m. 1900." In the left hand upper corner were: "From F. C. Olney, Wakefield, R. I." Then came the address as follows: "D. T. Bullock, Esq., Clerk Dist. Court, Fisher Co., Roby, Texas."

Our statute provides that: "The officer shall certify that the answers of the witness were signed and sworn to by the witness before him, and shall seal them up in an envelope, together with the commission and interrogatories and cross-interrogatories, if any, and shall write his name across the seal, and indorse on the envelope the names of the parties to the suit, and of the witnesses, and shall direct the package to the clerk of the court or justice of the peace from which the commission issued." Rev. Stats., art, 2284. The majority of the court are of opinion that the indorsements substantially comply with the requirements of the statute, and they cite the case of Evans v. Reynolds, 32 Ohio State, 163, as a case directly in point, which seems to sustain their position, but I am unable to agree with my brethren in this conclusion, because I do not think our statute has been followed, even substantially.

In Insurance Company v. Hird, 4 Texas Civil Appeals, 82, Justice Head, in delivering the opinion of the court, said: "The principal reason for requiring the names of the parties to the suit to be indorsed upon the envelope containing the deposition would seem to be to furnish information to the clerk in filing it, and to identify the cause in which it was to be used." Other reasons might also occur to the mind, but it is enough that the Legislature has required such indorsements to be made upon the envelope, and the courts have no right to ignore the legislative will. Each of the objections made, in my opinion, was good, and all should have been sustained and the deposition quashed. The indorsements on the inside of the envelope were not sufficient; they must be placed on the outside one, so as to notify everybody who touches the package or sees it, that it is a deposition of a certain witness in a certain case, and that it must be filed therein and handled as the statute required.

The second paragraph of the court's charge informed the jury that: "In order to constitute a valid and binding contract of marriage, there must be an offer of marriage, or promise to marry by the one party, which offer or promise must be made known to and accepted by the other party. The offer of marriage by the one party and its acceptance by the other need not be expressed in any formal language, either written or spoken. It is sufficient to establish a contract of marriage if it is shown by a preponderance of the evidence that the parties had mutually agreed to marry each other."

The defendant requested the court to instruct the jury as follows: "Unless you believe from the evidence that a contract of marriage was made and entered into by and between plaintiff and defendant (as a contract has been defined in the charge of the court) by correspondence, as alleged in plaintiff's third amended petition herein, you will find for the defendant."

The assignment of error which complains of the refusal to give this requested charge is overruled, as a majority of the court are of opinion that the allegations of the petition set forth a contract of marriage

made orally by and between the parties after the plaintiff's arrival in Texas, with or without being read in connection with the allegations setting forth the letter correspondence.

·To this conclusion, however, I am compelled to dissent. There is but one contract alleged in the petition, and that, it is plainly averred, was made by letter correspondence.

Holding as I do, that the petition alleges only a contract of marriage made by letter correspondence, I think the judgment ought to be reversed, but the majority of the court have concluded otherwise, and the judgment is affirmed.

*Affirmed.*

Hunter, Associate Justice, dissenting.

Upon certificate of dissent it was held by the Supreme Court: 1. That the deposition of the witness Sheldon should have been suppressed. 2. That plaintiff's petition set up only an agreement to marry by correspondence, and the trial court erred in refusing the requested charge which confined her right to recover to the contract by correspondence. See Barber v. Geer, 94 Texas, 581. Thereupon the judgment appealed from in this case was reversed and the cause remanded.

*Reversed and remanded.*